**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------X

MICHAEL STEWART AND SEAN THOMAS,

                                  Plaintiffs,

                  *-against-*

TRIDENT GENERAL CONTRACTING LLC,
JOHN MCDONALD (A/K/A "FITZ"), *Individually*,
DARREN MCNIFF, *Individually,*
PAUL DOE, *Individually,* AND
JANE DOE, *Individually,*

                                  Defendants.

---------------------------------------------------------------------X

**Docket No.**

**COMPLAINT**

**PLAINTIFFS DEMAND
A TRIAL BY JURY**

Plaintiffs, MICHAEL STEWART AND SEAN THOMAS, by their attorneys, PHILLIPS & ASSOCIATES, Attorneys at Law, PLLC, hereby complain of the Defendants, upon information and belief, as follows:

## NATURE OF THE CASE

1. Plaintiffs complain pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166) ("Title VII"), and the New York State Human Rights Law, New York State Executive Law §296, et. seq. ("NYSHRL"), the New York City Human Rights Law, New York City Administrative Code § 8-107, et seq. ("NYCHRL") and seeks damages to redress the injuries Plaintiffs have suffered as a result of being **discriminated against** on the basis of their **race**, in that Plaintiffs were **subjected to a hostile work environment by way of the Defendants' racially hostile comments made to Plaintiffs, and by way of Defendants' termination of Plaintiffs' employment**. Further, Plaintiffs seek damages to redress the injuries Plaintiffs suffered as a result of being subjected to **retaliation** when the Defendants

1

terminated their employment after they complained about the race discrimination.

## PARTIES

2. At all times relevant to the Complaint, Plaintiffs, who are African American males, were employed by Defendant TRIDENT GENERAL CONTRACTING LLC ("TRIDENT").

3. TRIDENT is a domestic limited liability company doing business in the State of New York. According to its LinkedIn profile, DEFENDANT TRIDENT is in the business of general contracting and describes itself as "an Open-Shop Concrete Foundation and Concrete Super-Structure contractor."

4. At all times hereinafter mentioned, PLAINTIFFS were employed by the DEFENDANTS.

5. The DEFENDANTS subjected PLAINTIFFS to discrimination and to constant, continuous and systematic racially discriminatory comments and treatment, including the use of the word "nigger" and employment termination as part of said discrimination and in retaliation for complaining of said discrimination.

6. That at all times relevant hereto, DEFENDANT JOHN MCDONALD, A/K/A "FITZ," ("FITZ"), was and is the General Foreman of DEFENDANT TRIDENT.  DEFENDANT FITZ was Plaintiffs' supervisor and manager and had supervisory authority over Plaintiffs. DEFENDANT FITZ had the authority to affect the terms and conditions of Plaintiffs' employment.  DEFENDANT FITZ is sued herein individually.

7. That at all times relevant hereto, DEFENDANT DARREN MCNIFF ("MCNIFF"), was and is a Foreman of DEFENDANT TRIDENT.  DEFENDANT MCNIFF was Plaintiffs' supervisor and manager and had supervisory authority over Plaintiffs.  DEFENDANT MCNIFF had the authority to affect the terms and conditions of Plaintiffs' employment.

DEFENDANT MCNIFF is sued herein individually.

8. That at all times relevant hereto, upon information and belief, DEFENDANT PAUL DOE ("PAUL DOE"), was a supervisor or Human Resources manager of DEFENDANT TRIDENT, or was otherwise responsible for and had the obligation to report and investigate allegations of racial discrimination made by employees of DEFENDANT TRIDENT. PLAINTIFFS complained of racial discrimination to PAUL DOE and, upon information and belief, no investigation was performed. Rather, the PLAINTIFFS' employment was ultimately terminated. DEFENDANT PAUL DOE had the authority to affect the terms and conditions of Plaintiffs' employment. DEFENDANT PAUL DOE is sued herein individually. Defendant Paul Doe's true last name is presently unknown to the PLAINTIFFS.

9. That at all times relevant hereto, DEFENDANT JANE DOE ("JANE DOE"), was and is a Project Manager of DEFENDANT TRIDENT. DEFENDANT JANE DOE was Plaintiffs' supervisor and manager and had supervisory authority over Plaintiffs. DEFENDANT JANE DOE had the authority to affect the terms and conditions of Plaintiffs' employment. DEFENDANT JANE DOE is sued herein individually. Defendant Jane Doe's true name is presently unknown to the PLAINTIFFS.

10. DEFENDANTS TRIDENT, MCNIFF, FITZ, PAUL DOE, and JANE DOE are collectively referred to herein as "DEFENDANTS."

## JURISDICTION AND VENUE

11. Jurisdiction of this Court is proper under 42 U.S.C. §2000e-5(f)(3), and 28 U.S.C. §§1331 and 1343.

12. The Court has supplemental jurisdiction over the claims of Plaintiffs brought under state law pursuant to 28 U.S.C. §1367.

13. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §1391(b), as the acts complained of occurred in that district.

## PROCEDURAL PREREQUISITES

14. Plaintiffs filed charges of discrimination upon which this Complaint is based with the Equal Employment Opportunities Commission ("EEOC") on or about January 30, 2019.

15. Plaintiffs received a Notice of Right to Sue from the EEOC, dated May 22, 2019, with respect to the herein charges of discrimination.

16. This Action is being commenced within ninety (90) days of receipt of said Right to Sue.

## FACTUAL ALLEGATIONS

17. PLAINTIFFS MICHAEL STEWART AND SEAN THOMAS are cousins and are African American males, who worked for DEFENDANTS as masons and concrete laborers.

18. PLAINTIFFS were each compensated at a pay rate of $25.00 per hour. Each Plaintiff worked approximately 40 hours per week. Accordingly, each Plaintiff's annual salary was approximately $52,000.00.

19. PLAINTIFF STEWART was hired by DEFENDANT FITZ and began working for the DEFENDANTS in July of 2015.

20. PLAINTIFF THOMAS was hired by DEFENDANT FITZ and began working for the DEFENDANTS in June of 2018.

21. The DEFENDANTS subjected PLAINTIFFS to a racially discriminatory and hostile work environment which included racially charged verbal abuse and the use of racial slurs.

22. For example, in August of 2017, at a job site located at 75 Dock Street in Yonkers, New York, PLAINTIFF STEWART observed DEFENDANT FITZ call an amateur black foreman a "nigger" and threaten to fight him.

23.    On or about June 29, 2018, at a job site located at 40 East End Avenue in New York, New York, DEFENDANT FITZ threatened to fight PLAINTIFF STEWART after DEFENDANT FITZ falsely accused PLAINTIFF STEWART of lying,

24.    On or about July 12, 2018, during a telephone conversation between DEFENDANT FITZ and PLAINTIFF STEWART, DEFENDANT FITZ referred to PLAINTIFF STEWART as a "stupid nigger," and falsely accused PLAINTIFF STEWART of not finishing a task at work.  During this conversation, DEFENDANT FITZ sounded drunk and was belligerent and disrespectful.  During this conversation, DEFENDANT FITZ threated to fight PLAINTIFF STEWART.

25.    On September 26, 2018, PLAINTIFFS STEWART and THOMAS went to the East End Avenue job site to work on an elevator shaft.  Due to safety reasons, PLAINTIFFS were told by a representative of the building owners that they could not perform the planned work until 3:30 p.m.

26.    Plaintiffs followed these instructions, and DEFENDANT FITZ responded by yelling at Plaintiffs and by referring to PLAINTIFF THOMAS as a "sneaky nigger," which PLAINTIFF STEWART witnessed.

27.    Following this incident, DEFENDANT FITZ cut the PLAINTIFFS' hours each down to 16-20 hours per week.

28.    On October 12, 2018, PLAINTIFF STEWART spoke to DEFENDANT MCNIFF and asked him for advice about what to do about DEFENDANT FITZ'S racially discriminatory and abusive behavior towards the PLAINTIFFS.

29.    PLAINTIFF STEWART told DEFENDANT MCNIFF that he was going to complain to about DEFENDANT FITZ.

5

30. DEFENDNAT MCNIFF responded by saying "good, because I have received many complaints about John." DEFENDANT MCNIFF was referring to DEFENDANT FITZ.

31. DEFENDANT MCNIFF then said to PLAINTIFF STEWART "you can't mess with a nigger's money."

32. PLAINTIFF STEWART knew DEFENDANT MCNIFF from having worked for the DEFENDANTS for a few years. DEFENDANT MCNIFF would frequently say "white power," would openly use the word "spic" in reference to other employees.

33. Later that same day, on October 12, 2018, PLAINTIFF STEWART went to pick up his paycheck at the DEFENDANTS' office located at 1160 Commerce Avenue in the Bronx.

34. PLAINTIFF STEWART told John Doe (a man who was working in the office and whose name is currently unknown to the PLAINTIFFS) that PLAINTIFFS have not been getting their same hours since the September 26, 2018 incident with DEFENDANT FITZ,

35. John Doe responded by telling PLAINTIFF STEWART to send an email to "payroll@trident.construction."

36. Later this same day, on October 12, 2018, PLAINTIFF STEWART sent an email to payroll@trident.construction, complaining about DEFENDANT FITZ'S behavior.

37. On October 15, 2018, PLAINTIFF STEWART sent another email to payroll@trident.construction, again complaining of DEFENDANT FITZ'S behavior and specifically noting that DEFENDANT FITZ had referred to PLAINTIFF STEWART as a "nigger."

38. On October 15, 2018, PLAINTIFF THOMAS also sent an email to payroll@trident.construction complaining of  DEFENDANT FITZ'S inappropriate behavior and use of the word "nigger."

39.    Later that same day, on October 15, 2018, payroll@trident.construction responded to PLAINTIFF STEWART'S email, copying PLAINTIFF THOMAS, and directing PLAINTIFFS to go work for DEFENDANT MCNIFF the next day at a job site located at 44 East 17th Street, New York, New York.  The email was signed by "Paul," who is named herein as DEFENDANT PAUL DOE.

40.    The next day, on October 16, 2018, PLAINTIFFS went to work for DEFENDANT MCNIFF at 44 East 17th Street.

41.    Upon information and belief, DEFENDANT PAUL DOE did not conduct any investigation into PLAINTIFFS' allegations of racial discrimination.  If any investigation had been conducted, it could only have been a sham investigation because PLAINTIFFS were never asked to speak to any investigators and there appeared to be no consequences for any of the DEFENDANTS.

42.    Upon PLAINTIFFS' arrival at the 44 East 17th Street site, DEFENDANT MCNIFF said to the PLAINTIFFS "I don't know why they sent you here, but they did.  You won't be here for long."

43.    On October 17, 2018, PLAINTIFF STEWART went into work again at 44 East 17th Street.  PLAINTIFF THOMAS was not with PLAINTIFF STEWART, however, due to the fact that the DEFENDANTS subjected PLAINTIFF THOMAS to overly strenuous work the previous day.  Accordingly, on October 17, 2018, PLAINTIFF THOMAS was in too much pain to work.

44.    Upon PLAINTIFF STEWART arriving for work, DEFENDANT MCNIFF asked PLAINTIFF STEWART "where is your cousin?" DEFENDANT MCNIFF was referring to PLAINTIFF THOMAS.

45. PLAINTIFF STEWART responded by telling DEFENDANT MCNIFF "I think he is in some pain."

46. DEFENDANT MCNIFF responded to PLAINTIFF STEWART by saying "is he a faggot or a cunt?  He is a faggot." DEFENDANT MCNIFF also told PLAINTIFF STEWART that PLAINTIFF THOMAS was fired and that he is a "lazy nigger."

47. On October 19, 2018, DEFENDANT MCNIFF called PLAINTIFF STEWART a "faggot" and a "cunt" when PLAINTIFF STEWART called DEFENDANT MCNIFF to inform him that he was running late to work due to body pain.

48. On October 31, 2018, PLAINTIFF STEWART went into work at 44 East 17th Street.  On this day, DEFENDANT MCNIFF and DEFENDANT JANE DOE were closely observing and watching PLAINTIFF STEWART through his entire shift.

49. At the end of PLAINTIFF STEWART'S shift, DEFENDNAT JANE DOE terminated PLAINTIFF STEWART'S employment.

50. DEFENDANT JANE DOE'S stated reason for terminating PLAINTIFF STEWART was that he had been on his cell phone.  However, this was clearly a pretext because it was commonly known and accepted for all workers to be on their cell phones at various points throughout their shifts without having their employment terminated.

51. It is clear based on the temporal proximity between Plaintiffs' complaints of racial harassment and discrimination, and the DEFENDANTS' termination of PLAINTIFF STEWART, that the DEFENDANTS terminated PLAINTIFF STEWART due to his race and because he complained of racial harassment and discrimination.

52. At all times relevant to the Complaint, PLAINTIFF STEWART was an above-satisfactory employee, who performed his duties without any performance issues. PLAINTIFF STEWART was never written up as a result of his employment with the DEFENDANTS.

53. PLAINTIFF STEWART was qualified for his position/title.

54. After the DEFENDANTS terminated PLAINTIFF STEWART'S employment, PLAINTIFF THOMAS continued working for the DEFENDANTS until November 8, 2018, when DEFENDANT MCNIFF terminated PLAINTIFF THOMAS'S employment.

55. On November 8, 2018, PLAINTIFF THOMAS went into work at the 44 East 17th Street job site which was being supervised and managed by DEFENDANT MCNIFF.

56. DEFENDANT MCNIFF asked PLAINTIFF THOMAS to walk out onto a seventh story ledge to grind and finish concrete.

57. PLAINTIFF THOMAS explained to DEFENDANT MCNIFF that what he was being asked to do seemed unsafe and that he did not feel comfortable doing it.

58. DEFENDANT MCNIFF responded by telling PLAINTIFF THOMAS "we don't need you anymore," thereby terminating PLAINTIFF THOMAS'S employment.

59. However, DEFENDANT MCNIFF'S stated reason for terminating PLAINTIFF THOMAS'S employment was clearly a pretext because the requested work could have been completed another way. Rather than discuss a resolution, DEFENDANT MCNIFF immediately terminated PLAINTIFF THOMAS'S employment.

60. It is clear based on the temporal proximity between Plaintiffs' complaints of racial harassment and discrimination, and the DEFENDANTS' termination of PLAINTIFF THOMAS, that the DEFENDANTS terminated PLAINTIFF THOMAS due to his race and because he complained of racial harassment and discrimination.

61. At all times, the DEFENDANTS were acting pursuant to their statuses, authority and positions as directors, administrators and/or agents of DEFENDANT TRIDENT.

62. But for their positions as a supervisors, managers, and agents of DEFENDANT TRIDENT, DEFENDANTS FITZ, MCNIFF, PAUL DOE, AND JANE DOE would not have been able to racially discriminate against PLAINTIFFS in the above-described manner.

63. DEFENDANTS would not have retaliated against PLAINTIFFS but for their complaints about DEFENDANTS' racial discrimination.

64. DEFENDANTS, individually and collectively, had no good faith business or justification for the actions taken against PLAINTIFFS as described herein.

65. As a result of DEFENDANTS' actions, PLAINTIFFS felt, and continue to feel, extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

66. As a result of DEFENDANTS' discriminatory and intolerable treatment, PLAINTIFFS suffered, and continue to suffer, emotional distress.

67. As a result of the acts and conduct complained of herein, PLAINTIFFS have suffered, and will continue to suffer, special damages, inconvenience, loss of enjoyment of life, depression, anxiety, fear, anger, emotional pain and suffering and other non-pecuniary losses.

68. As DEFENDANTS' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, PLAINTIFFS demand punitive damages as against all DEFENDANTS, jointly and severally.

### AS A FIRST CAUSE OF ACTION
### FOR DISCRIMINATION UNDER TITLE VII
(*Against Defendant Trident*)

69. PLAINTIFFS repeat and reallege each and every allegation made in the above paragraphs

of this complaint.

70.    This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e et seq., for relief based upon the unlawful employment practices of the above-named DEFENDANTS. PLAINTIFFS complain of DEFENDANTS' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's race.

71.    DEFENDANTS engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq., by discriminating against PLAINTIFFS because of their race.

72.    DEFENDANTS disregarded PLAINTIFFS' complaints as well as their obligations as directors/administrators, who had a duty to act in the face of racial discrimination complaints made by PLAINTIFFS and allowed the racially-hostile work environment to continue and escalate against PLAINTIFFS.

73.    As a result of DEFENDANTS' actions, PLAINTIFFS were extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

74.    DEFENDANTS had no good faith business justification for the actions against PLAINTIFFS as described herein.

75.    As a result of the acts and conduct complained of herein, PLAINTIFFS have suffered special damages, inconvenience, loss of enjoyment of life, depression, anxiety, fear, anger, emotional pain and suffering and other non-pecuniary losses.

76.    DEFENDANTS' conduct was malicious, willful and conducted with full knowledge of the law.

77.    PLAINTIFFS are entitled to the maximum amount allowed under this statute/law.

**AS A SECOND CAUSE OF ACTION**
**FOR RETALIATION UNDER TITLE VII**
(*Against Defendant Trident*)

78.    PLAINTIFFS repeat and reallege each and every allegation made in the above paragraphs of this complaint.

79.    Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

80.    PLAINTIFFS were retaliated against by DEFENDANTS for engaging in protected activity.

81.    Following PLAINTIFFS' complaint, PLAINTIFFS were subjected to adverse employment actions as described above, including employment termination.

82.    DEFENDANTS had no valid business justification for the retaliatory and abusive actions taken against PLAINTIFFS following their engagement in protected activity.

83.    DEFENDANTS placed PLAINTIFFS in an awkward, hostile and uncomfortable employment position as the victims of race discrimination.

84.    As a result of DEFENDANTS' actions, PLAINTIFFS were extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

85.    As a result of the acts and conduct complained of herein, PLAINTIFFS have suffered special damages, inconvenience, loss of enjoyment of life, depression, anxiety, fear, anger, emotional pain and suffering and other non-pecuniary losses.

86.    DEFENDANTS' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

87.    PLAINTIFFS are entitled to the maximum amount allowed under this statute/law.

**AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION
UNDER NEW YORK STATE EXECUTIVE LAW**
(*Against All Defendants*)

88.    PLAINTIFFS repeat, reiterate and reallege each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

89.    New York State Executive Law §296 provides that, "1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's race. . . to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

90.    DEFENDANTS utilized their positions/statuses as managers/supervisors/administrators at DEFENDANT TRIDENT, to subject PLAINTIFFS to *inter alia,* race discrimination.

91.    DEFENDANTS disregarded PLAINTIFFS' complaints as well as their obligations as directors/administrators, who had a duty to act in the face of racial discrimination complaints made by PLAINTIFFS and allowed the racially-hostile work environment to continue and escalate against PLAINTIFFS.

92.    As a result of DEFENDANTS' actions, PLAINTIFFS were extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

93.    DEFENDANTS had no good faith business justification for the actions against PLAINTIFFS as described herein.

94. As a result of the acts and conduct complained of herein, PLAINTIFFS have suffered special damages, inconvenience, loss of enjoyment of life, depression, anxiety, fear, anger, emotional pain and suffering and other non-pecuniary losses.

95. DEFENDANTS' conduct was malicious, willful and conducted with full knowledge of the law.

96. PLAINTIFFS are entitled to the maximum amount allowed under this statute/law.

**AS A FOURTH CAUSE OF ACTION FOR RETALIATION**
**UNDER NEW YORK STATE EXECUTIVE LAW**
(*Against All Defendants*)

97. PLAINTIFF repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

98. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

99. DEFENDANTS engaged in an unlawful discriminatory practice by retaliating, and otherwise discriminating against PLAINTIFFS because of PLAINTIFFS' opposition to the unlawful employment practices of the DEFENDANTS.

100. PLAINTIFFS were retaliated against by DEFENDANTS for engaging in protected activity.

101. PLAINTIFFS complained to the individual DEFENDANTS about the racial discrimination that they faced at DEFENDANT TRIDENT.

102. DEFENDANTS had no valid business justification for the retaliatory and abusive actions taken against PLAINTIFFS following their engagement in protected activity.

14

103. DEFENDANTS placed PLAINTIFFS in an awkward, hostile and uncomfortable employment position as the victims of racial discrimination.

104. As a result of DEFENDANTS' actions, PLAINTIFFS have been extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

105. As a result of the acts and conduct complained of herein, PLAINTIFFS have suffered special damages, inconvenience, loss of enjoyment of life, depression, anxiety, fear, anger, emotional pain and suffering and other non-pecuniary losses.

106. DEFENDANTS' conduct was malicious, willful, outrageous, and conducted with full knowledge of the law.

107. PLAINTIFFS are entitled to the maximum amount allowed under this statute/law.

## AS A FIFTH CAUSE OF ACTION FOR DISCRIMINATION
### UNDER NEW YORK STATE EXECUTIVE LAW - *AIDER AND ABETTOR LIABILITY*
### *(Against All Individual Defendants)*

108. PLAINTIFFS repeat, reiterate and reallege each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

109. New York State Executive Law §296 (6) provides that it shall be an unlawful discriminatory practice: "For any person to **aid, abet**, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

110. Individual DEFENDANTS FITZ, MCNIFF, PAUL DOE, AND JANE DOE engaged in an unlawful discriminatory practice in violation of New York State Executive Law §296(6) by aiding, abetting, inciting, compelling and coercing the discriminatory and retaliatory conduct.

111. Individual DEFENDANTS FITZ, MCNIFF, PAUL DOE, AND JANE DOE, as members of management and supervisors/administrators of DEFENDANT TRIDENT, are liable for

aiding and abetting in the discrimination and wrongful retaliation (including termination) faced by PLAINTIFFS.

112. Individual DEFENDANTS FITZ, MCNIFF, PAUL DOE, AND JANE DOE utilized their management statuses/positions to subject PLAINTIFFS to, *inter alia*, race discrimination and harassment, retaliation, and a hostile working environment as outlined above.

113. Individual DEFENDANTS FITZ, MCNIFF, PAUL DOE, AND JANE DOE knew, should have known and were informed about the discriminatory and racially harassing and hostile actions against PLAINTIFFS and took no action to prevent same.

114. Individual DEFENDANTS FITZ, MCNIFF, PAUL DOE, AND JANE DOE refused to take PLAINTIFFS' complaints or to take her concerns seriously. Instead, they allowed the hostile work environment to continue against PLAINTIFFS by allowing Plaintiffs to be suspended and then terminated.

115. Individual DEFENDANTS FITZ, MCNIFF, PAUL DOE, AND JANE DOE, knew or should have known that their individual actions violated the company's policies and rules, as well as PLAINTIFFS' individual rights.

116. As a result of INDIVIDUAL DEFENDANTS' FITZ'S, MCNIFF'S, PAUL DOE'S, AND JANE DOE'S actions, PLAINTIFFS were extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

117. As a result of the acts and conduct complained of herein, PLAINTIFFS have suffered special damages, inconvenience, loss of enjoyment of life, depression, anxiety, fear, anger, emotional pain and suffering and other non-pecuniary losses.

118. INDIVIDUAL DEFENDANTS' conduct was malicious, willful, outrageous, and conducted with full knowledge of the law.

119.   DEFENDANTS had no good faith business justification for their actions/conduct against PLAINTIFFS.

120.   PLAINTIFFS are entitled to the maximum amount allowable under this statute.

**AS AN SIXTH CAUSE OF ACTION**
**DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE**
**NEW YORK CITY HUMAN RIGHTS LAW ("NYCHRL")**

(*Against All Defendants*)

121.   PLAINTIFFS repeat and reallege each and every allegation made in the above paragraphs of this complaint.

122.   The New York City Administrative Code § 8-107(1) provides that "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, **race**, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

123.   DEFENDANTS utilized their positions/status as managers/supervisors/administrators at DEFENDANT TRIDENT, to subject PLAINTIFFS to *inter alia,* race discrimination.

124.   DEFENDANTS disregarded PLAINTIFFS' complaints as well as their obligations as directors/administrators, who had a duty to act in the face of racial discrimination complaints made by PLAINTIFFS and ratified the racially-hostile work environment.

125.   DEFENDANTS ignored and minimalized PLAINTIFFS' complaints and requests for assistance and/or protection against the hostile environment they faced at DEFENDANT TRIDENT.

126.   When PLAINTIFFS complained to the DEFENDANTS about the racial harassment, they

17

were terminated from their employment .

127. As a result of DEFENDANTS' actions, PLAINTIFFS were extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

128. DEFENDANTS had no good faith business justification for the actions against PLAINTIFFS as described herein.

129. As a result of the acts and conduct complained of herein, PLAINTIFFS have suffered special damages, inconvenience, loss of enjoyment of life, depression, anxiety, fear, anger, emotional pain and suffering and other non-pecuniary losses.

130. DEFENDANTS' conduct was malicious, willful and conducted with full knowledge of the law.

131. PLAINTIFFS are entitled to the maximum amount allowed under this statute/law.

**AS A SEVENTH CAUSE OF ACTION FOR RETALIATION**
**UNDER THE NEW YORK CITY ADMINISTRATIVE CODE**
**NEW YORK CITY HUMAN RIGHTS LAW ("NYCHRL")**

**(*Against All Defendants*)**

132. PLAINTIFFS repeat and reallege each and every allegation made in the above paragraphs of this complaint.

133. The New York City Administrative Code § 8-107(7) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discriminate against any person because such person has opposed any practices forbidden under this chapter. . ."

134. DEFENDANTS engaged in an unlawful discriminatory practice in violation of New York City Administrative Code § 8-107(7) by discriminating against PLAINTIFFS because of PLAINTIFFS' opposition to the unlawful employment practices of DEFENDANTS.

135. DEFENDANTS engaged in an unlawful discriminatory practice by retaliating, and

18

otherwise discriminating against PLAINTIFFS because of PLAINTIFFS' opposition to the unlawful employment practices of the DEFENDANTS.

136. PLAINTIFFS were retaliated against by DEFENDANTS for engaging in protected activity.

137. PLAINTIFFS complained to the individual DEFENDANTS about the racial discrimination that they faced at DEFENDANT TRIDENT.

138. Following PLAINTIFFS' complaints, PLAINTIFFS were placed in another hostile environment and eventually terminated from their jobs, thus constituting adverse employment actions and retaliation.

139. DEFENDANTS had no valid business justification for the retaliatory and abusive actions taken against PLAINTIFFS following their engagement in protected activity.

140. DEFENDANTS placed PLAINTIFFS in an awkward, hostile and uncomfortable employment position as the victim of racial discrimination.

141. As a result of DEFENDANTS' actions, PLAINTIFFS have been extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

142. As a result of the acts and conduct complained of herein, PLAINTIFFS have suffered special damages, inconvenience, loss of enjoyment of life, depression, anxiety, fear, anger, emotional pain and suffering and other non-pecuniary losses.

143. DEFENDANTS' conduct was malicious, willful, outrageous, and conducted with full knowledge of the law.

144. PLAINTIFFS are entitled to the maximum amount allowed under this statute/law.

## AS AN EIGHTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER THE NYCHRL- *AIDER AND ABETTOR LIABILITY*
### (*Against the Individual Defendants*)

145.    PLAINTIFFS repeat and reallege each and every allegation made in the above paragraphs of this complaint.

146.    The New York City Administrative Code § 8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to **aid, abet**, incite, compel, or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

147.    Individual DEFENDANTS engaged in an unlawful discriminatory practice in violation of New York State Executive Law Section 296(6) by aiding, abetting, inciting, compelling and coercing the discriminatory and retaliatory conduct.

148.    Individual DEFENDANTS, as members of management and supervisors/administrators of DEFENDANT TRIDENT, are liable for aiding and abetting in the discrimination and wrongful retaliation (including termination) faced by PLAINTIFFS.

149.    Individual DEFENDANTS utilized their management statuses/positions to subject PLAINTIFFS to, *inter alia*, race discrimination, retaliation, and a hostile working environment as outlined above.

150.    Individual DEFENDANTS knew, should have known and were informed about the discriminatory and racially harassing and hostile actions against PLAINTIFFS and took no action to prevent same.

151.    Individual DEFENDANTS refused to take PLAINTIFFS' complaints or to take their concerns seriously. Instead, they allowed the hostile work environment to continue against PLAINTIFFS by allowing Plaintiffs to be suspended continuously subject to hostile and unsafe working conditions, and then terminated.

152. Individual DEFENDANTS knew or should have known that their individual actions violated the company's policies and rules, as well as PLAINTIFFS' individual rights.

153. As a result of INDIVIDUAL DEFENDANTS' actions, PLAINTIFFS were extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

154. As a result of the acts and conduct complained of herein, PLAINTIFFS have suffered special damages, inconvenience, loss of enjoyment of life, depression, anxiety, fear, anger, emotional pain and suffering and other non-pecuniary losses.

155. INDIVIDUAL DEFENDANTS' conduct was malicious, willful, outrageous, and conducted with full knowledge of the law.

156. DEFENDANTS had no good faith business justification for their actions/conduct against PLAINTIFFS.

157. PLAINTIFFS are entitled to the maximum amount allowable under this statute.

**AS A NINTH CAUSE OF ACTION FOR DISCRIMINATION**
**UNDER THE NEW YORK CITY ADMINISTRATIVE CODE**
***VICARIOUS EMPLOYER LIABILITY***
*(Against Defendant Trident)*

158. PLAINTIFFS repeat and reallege each and every allegation made in the above paragraphs of this complaint.

159. The New York City Administrative Code § 8-107(13) Employer liability for discriminatory conduct by employee, agent or independent contractor.

   a. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.

   b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:

      1. the employee or agent exercised managerial or supervisory

21

responsibility; or

2.  the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct here that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

3.   the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

c.  An employer shall be liable for an unlawful discriminatory practice committed  by a person employed as an independent contractor, other than an agent of such employer, to carry out work in furtherance of the employer's business enterprise only where such discriminatory conduct was committed in the course of such employment and the employer had actual knowledge of and acquiesced in such conduct.

160.   DEFENDANT TRIDENT violated the section cited herein as set forth.

161.   DEFENDANTS subjected PLAINTIFFS to race discrimination and retaliation as alleged above.

162.   DEFENDANT TRIDENT was aware and or should have been aware that PLAINTIFFS were being subjected to unlawful discrimination, retaliation and a hostile work environment as outlined in this Complaint above.

163.   DEFENDANT TRIDENT was made aware of PLAINTIFFS' complaints and concerns because they complained to DEFENDANTS of the harassment and discrimination alleged herein.

164.   DEFENDANTS either did nothing to assist PLAINTIFFS and/or to investigate or abate the hostile work environment, discrimination and/or retaliation against PLAINTIFFS, or DEFENDANTS' assisted in the unlawful conduct against PLAINTIFFS.

With notice of the actions against PLAINTIFFS, DEFENDANT TRIDENT's upper-level-

22

management ignored PLAINTIFFS' concerns, refused to investigate same, and allowed retaliatory adverse employment actions to take place against PLAINTIFFS.

165.   Individual DEFENDANTS would not have been able to take their respective actions against PLAINTIFFS *but for* their employment and management position at DEFENDANT TRIDENT.

166.   DEFENDANT TRIDENT is therefore vicariously liable for the race discrimination, hostile environment and retaliation experienced by PLAINTIFFS.

167.   As a result of the acts and conduct complained of herein, PLAINTIFFS have suffered special damages, inconvenience, loss of enjoyment of life, depression, anxiety, fear, anger, emotional pain and suffering and other non-pecuniary losses.

## JURY DEMAND

168.   Plaintiffs request a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiffs respectfully request a judgment against Defendants:

A.   Declaring that Defendants engaged in unlawful employment practices prohibited by Title VII, the NYCHRL, and NYSHRL in that Defendants discriminated against Plaintiffs on the basis of their race and retaliated against Plaintiffs for complaining of racial discrimination.

B.   Awarding Plaintiffs compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to their reputation in an amount to be proven;

C.   Awarding Plaintiffs punitive damages;

D.   Awarding Plaintiffs attorneys' fees, costs, and expenses incurred in the prosecution of the action pursuant to 42 U.S.C §1988 and as afforded under the above local statutes; and

E.   Awarding Plaintiffs such other and further relief as the Court may deem equitable, just

and proper to remedy Defendants' unlawful employment practices.

Dated:  New York, New York
        June 10, 2019

                                    **PHILLIPS & ASSOCIATES,**
                                    **ATTORNEYS AT LAW, PLLC**

                                            /s/

                    By:     _____

                                    Jessica Massimi
                                    *Attorneys for Plaintiff*
                                    45 Broadway, Suite 620
                                    New York, New York 10006
                                    (212) 248-7431

24